UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURGHERGRAY LLP,<br><br>          Plaintiff,<br><br>v.<br><br>CHRISTOPHER KLUG,<br><br>          Defendant. | Civil Action No. |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
TO VACATE ARBITRATION AWARD**

Aimée S. Lin, Esq.
**GOLDBERG SEGALLA LLP**
1037 Raymond Boulevard
Suite 1010
Newark, New Jersey 07102
Tel.: 973-681-7000
alin@goldbergsegalla.com

*Attorneys for Plaintiff
 BurgherGray LLP*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

FACTS .....................................................................................................................................4

    I.   Facts Relating to the Agreements to Arbitrate ....................................................4

    II.  Facts Relating to Plaintiff's Actionable Conduct ................................................6

ARGUMENT ...........................................................................................................................9

    The Arbitration Award Must Be Vacated
    Because It Was Procured by Fraud .........................................................................9

CONCLUSION ......................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Benson v. Farhadian,*
   195 A.D.3d 548 (1st Dep't 2021) ..................................................................................11

*Kolel Beth Yechiel Mechil of Tartikov v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013)............................................................................................10

*MLGenius Holdings LLC v. Google LLC,*
   2022 U.S. App. LEXIS 6206 (2d Cir. 2022),
   cert. denied, 143 S. Ct. 522 (2023) ...............................................................................11

*Odeon Capital Grp. v. Ackerman,*
   864 F. 3d 191 (2d Cir. 2017).................................................................................... 9-10

*Pfeffer v. Wells Fargo Advisors, LLC*,
   2017 U.S. Dist. LEXIS 78204 (S.D.N.Y. May 23, 2017),
   *aff'd*, 723 Fed. Appx. 45 (2d Cir. 2018) ........................................................................10

*Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020)..........................................11, 12

**Statutes**

9 U.S.C. § 1...............................................................................................................................9

9 U.S.C. §§ 1-16 ......................................................................................................................9

9 U.S.C. §§ 201, 208................................................................................................................9

9 U.S.C. §§ 301-307 ................................................................................................................9

10 U.S.C. § 10(a)(1).................................................................................................................9

D.C. Code §§ 32-1301, *et seq*..................................................................................................1

D.C. Wage Act ....................................................................................................................1, 3

FAA...........................................................................................................................................9

**Other Authority**

https://basswoodcounsel.com/christopher-klug...........................................................................2

https://basswoodcounsel.com/meet-your-team/ ..........................................................................2

Terry L. Trantina, *What Law Applies to an Agreement to Arbitrate?*
Dispute Resolution Magazine, Fall 2015 .................................................................................11

## **INTRODUCTION**

This matter arises from two agreements entered into by plaintiff BurgherGray LLP ("BurgherGray," or "Plaintiff") and defendant Christopher Klug ("Klug" or "Defendant").

Pursuant to the agreements, when a dispute arose between the parties, Defendant commenced an Arbitration with the American Arbitration Association ("AAA") against plaintiff BurgherGray with a Demand for Arbitration on or about February 17, 2023, for breach of contract. A copy of the Demand for Arbitration is attached to the Declaration of Aimée S. Lin, Esq., in Support of Defendants' Motion to Vacate Arbitration Award ("Lin Declaration" or "Lin Decl.") submitted herewith as Exhibit 1. See Lin Decl. at Exhibit 1.

The parties tried the Arbitration[1] before a single arbitrator (the "Tribunal") on July 30, 2024, and August 6, 2024. A copy of the Final Award of Arbitrator, dated November 25, 2024 (the "Final Award"), is attached to the Lin Decl. as Exhibit 2; see Exhibit 2 at 1.[2]

The Tribunal in the Arbitration found in Plaintiff's favor in its Final Award. The Tribunal awarded Plaintiff in excess of $400,000, plus attorneys' fees, interest and costs.

Since then, on or about January 30, 2025, while performing a cybersecurity audit to ensure compliance with a BurgherGray client's cybersecurity requirements, BurgherGray's Chief Information Officer Terry Taffe ("Taffe") discovered email forwarding protocols in place that automatically sent emails to Klug's Associate Gina Lee ("Lee") and Paralegal Renee Tiun ("Tiun")

---

[1] *Christopher Klug, Claimant v. BurgherGray LLP, Respondent*, AAA Case No. 01-23-0000-7133.

[2] However, the Tribunal refused to hear Plaintiff's claim purportedly arising under the District of Columbia Wage Act, D.C. CODE §§ 32-1301, *et seq.* (the "D.C. Wage Act"). This is because Plaintiff asserted it too late into the Arbitration. See Id. at 15-22, 61. As a consequence, Plaintiff was unable to seek treble damages under the statute.

(collectively referred to as Klug's "Team") addressed to their BurgherGray accounts to their new firm, Klug Counsel PLLC ("Klug Counsel").[3]

BurgherGray retained Vistrada LLC ("Vistrada"), a cybersecurity, risk management and technology consulting firm, to conduct a preliminary investigation. The investigation revealed that Plaintiff and his Team had installed automatic forwarding protocols to their BurgherGray email accounts without BurgherGray's knowledge or permission. Worse, the protocols were programmed such that the emails would not hit BurgherGray's email servers. Rather, the emails would automatically go to Defendant and his Team, bypassing BurgherGray's servers. As a result, BurgherGray did not know how many emails Defendant and his Team intercepted, how much client information was compromised (if any) or how many clients (and fees) were plundered from BurgherGray.

This grave wrongdoing by Klug and his Team triggers the faithless servant doctrine, among other things, warranting the vacatur of the Final Award.[4]

---

[3] Klug now appears to be a Partner and Co-Founder of Basswood Counsel. https://basswoodcounsel.com/christopher-klug/. Lee was Klug's Associate while they were with BurgherGray. Lee is now a Partner as Basswood Counsel. Tiun continues to work Klug and Lee at Basswood Counsel as well. https://basswoodcounsel.com/meet-your-team/.

[4] Other potential causes of action include breach of fiduciary duty, unfair competition, breach of the Partner Agreement for "Cause" (triggering payment obligations to BurgherGray by Klug) and conversion.

In addition, BurgherGray plans to seek the advice of ethics counsel to determine whether there is an obligation to report Klug's and his Team's misconduct to the appropriate authorities in the jurisdictions in which they practice.

## HISTORY OF THE CASE

This case has a long and somewhat tortured history.

I. **The Arbitration.**

Defendant commenced the Arbitration with the AAA against plaintiff BurgherGray with a Demand for Arbitration on or about February 17, 2023. See Lin Decl. at Exhibit 1. The entire description of Defendant's claims in the Arbitration read as follows:

> The parties entered into an agreement through which [Defendant] provided legal services in exchange for certain percentages of the fees billed. [BurgherGray] failed to fulfill its obligations under the contract and has failed to pay [Defendant] amounts owed under the contract.

Id. at 1.

In the Arbitration, BurgherGray learned for the first time that Defendant intended to prosecute a claim arising under the D.C. Wage Act at or around the time the parties filed summary judgment motions before the Tribunal, on October 23, 2023 – about eight months into the Arbitration. BurgherGray objected to the belated assertion of this claim. Later, on November 29, 2023, Plaintiff moved before the Tribunal to add the D.C. Wage Act claim, and BurgherGray opposed the motion. The Tribunal denied Defendant's motion initially by verbal ruling. Since then, the Tribunal reduced the ruling to writing as part of its Final Award, dated November 25, 2024. See Lin Decl. at Exhibit 2 at 15-22, 61.

II. **The D.C. Superior Court Matter.**

Unhappy with the direction the Arbitration was taking with respect to his purported D.C. Wage Act claim, Defendant filed a lawsuit in the D.C. Superior Court on May 10, 2024, during the pendency of the Arbitration. Plaintiff[5] filed a Motion to Dismiss pursuant to D.C. SUPER Ct. R.

---

[5] BurgherGray was named as a defendant in the lawsuit, along with equity its partners Gopal M. Burgher ("Burgher") and Sandra M. Honegan-Pounder ("Honegan-Pounder").

3

12(b)(6) on the basis of the forum selection and arbitration clauses in the Agreements between Defendant and BurgherGray.[6] The court dismissed the action without prejudice by Order dated July 18, 2024. A copy of the Order is attached to the Lin Declaration as Exhibit 3. See Lin Decl. at Exhibit 3.

### III.   The Previous SDNY Matter.

Defendant commenced another lawsuit against BurgherGray and its equity partners Burgher and Honegan-Pounder on August 30, 2024, by filing a Complaint (the "Previous SDNY Action").[7] See Dkt 1. After numerous filings by the parties, the Court dismissed the case *sua sponte*. Dkt. 33. The Court's Decision and Order sums up the matter nicely. A copy of the Decision and Order is attached to the Lin Decl. as Exhibit 4. See Exhibit 4. The dismissal of Klug's D.C. Wage Claim is with prejudice. Id. at 9.

This suit follows.

## FACTS

### I.   Facts Relating to Agreements to Arbitrate.

Defendant is an attorney; BurgherGray is a law firm headquartered in New York, New York. See Lin Decl. at Exhibit 4 at 1.

As stated above, there are two Agreements between the parties. The first agreement is dated September 19, 2019 (the "Of Counsel Agreement") Id. at Exhibit 3 at ¶ 16. The second agreement

---

[6] Plaintiff also moved, in the alternative, for a stay of the D.C. Superior Court action, and to compel Defendant to adjudicate the claims asserted at arbitration.

[7] Entitled, *Christopher Klug, Plaintiff v. BurgherGray LLP, Gopal M. Burgher and Sandra M. Honegan-Pounder*, bearing case number 24 Civ. 6577 (PAE).

4

is dated August 17, 2020 (the "Partner Agreement").[8] A copy of the Of Counsel Agreement is attached to the Lin Declaration as Exhibit 5. A copy of the Partner Agreement is attached to the Lin Declaration as Exhibit 6. The two agreements are collectively referred to as the "Agreements."

Defendant began his formal relationship with BurgherGray with the Of Counsel Agreement. Later, Plaintiff joined BurgherGray as a non-equity contract partner on or about September 1, 2020. See Lin Decl. at Exhibit 6. Plaintiff and BurgherGray memorialized the terms of Klug's employment with the Partner Agreement. Lin Decl. at Exhibit 4. The Partner Agreement contains the following arbitration clause:

> Dispute Resolution. In order to minimize the potentially high costs incurred by all parties involves in disputes, any controversy arising out of or relating to this agreement or the cessation of your relationship with [BurgherGray], including without limitation, any claim by [Plaintiff] against [BurgherGray] or any of its affiliates, directors, officers or employees under federal, state of local statutory or common law, and any dispute over the scope of this paragraph, shall be resolved solely by binding arbitration in New York, New York in accordance with the rules of the [AAA]. [Plaintiff] and [BurgherGray] agree to keep confidential from third parties (other than an independent and neutral arbitrator or arbitrators) the existence of any dispute, unless otherwise required by law. A judgment on the arbitrator's decision shall be final and may be entered in any court having jurisdiction. In the event that a dispute does arise, this letter shall be governed by and construed in accordance with the substantive laws of the State of New York in accordance with the provisions of Section 17.

Id. at Exhibit 6 at ¶ 16. The "Dispute Resolution" paragraph in the Of Counsel Agreement is nearly identical. The difference does not affect the provisions' similar enforceability.[9]

---

[8] Lin Decl. at Exhibit 6 at ¶ 17. "Partner Agreement" is a bit of a misnomer, as Plaintiff did not have equity in BurgherGray or otherwise have an ownership interest in the firm. See Lin Decl. at Exhibit 6 at 1.

[9] The Partner Agreement has the phrase "in accordance with the provisions of section 17," at the end of the paragraph, which the Of Counsel Agreement does not. Compare Lin Decl. at Exhibit 6 at ¶ 16 to Exhibit 5 at ¶ 16.

5

The Agreements also contain a forum selection clause:

> Subject to Section 16 [the arbitration clause], any action or proceeding by either of the parties to enforce this Agreement shall be brought only in a state or federal court located in the State of New York, County of New York. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

See Lin Declaration at Exhibit 6 at ¶ 17.[10]

Defendant resigned from his position with BurgherGray to take effect September 1, 2021, about one year to the day that he started with BurgherGray. See Declaration of Terry Taffe ("Taffe Declaration" or "Taffe Decl."), submitted herewith, at ¶ 3.

About 18 months later, on or about February 17, 2023, Defendant commenced the Arbitration against BurgherGray. See Exhibit 1. Plaintiff's entire description of his Arbitration claims is as follows:

> The Parties entered into an agreement through which [Plaintiff] provided legal services in exchange for certain percentages of the fees billed. [BurgherGray] failed to fulfill its obligations under the contract and has failed to pay Claimant amounts owed under the contract.

Id. at Exhibit 1 at 1.

**II.     Facts Relating to Plaintiff's Actionable Misconduct.**

In or about late January 2025, about two months after the conclusion of the Arbitration, Taffe conducted an audit of BurgherGray's IT systems and cybersecurity to ensure BurgherGray was in compliance with the security requirements of one of BurgherGray's clients. See Taffe Decl. at ¶ 8.

---

[10] The forum selection clause in the Of Counsel Agreement is identical, except for mistakenly referring to paragraph 15, entitled "Exit Obligations," instead of paragraph 16. Id. at Exhibit 5 at ¶ 16.

6

On or about January 30, 2025, Taffe discovered forwarding rules in connection with Klug's Associate's email account, glee@burghergray.com (for Associate Lee) and Klug's Paralegal's email account, rtiun@burghergray.com (for Paralegal Tiun). Id. at ¶ 9. The rules caused emails being sent to glee@burghergray.com and rtiun@burghergray.com to be forwarded automatically to email boxes glee@klugcounsel.com and rtiun@klugcounsel.com, respectively. Id. at ¶ 10. Neither Lee nor Tiun, nor anyone else, had permission to put these forwarding rules in place. Id.

These forwarding rules were also programmed such that any emails sent to glee@burghergray.com or rtiun@burghergray.com would not hit the BurgherGray servers. Id. at ¶ 11. Thus, BurgherGray would not be aware of any emails sent to glee@burghergray.com or rtiun@burghergray.com. Id. This type of forwarding rule is difficult to detect, casting a pall of willful surreptitious wrongdoing. Id.

Taffe saw that no emails came into the Lee and Tiun BurgherGray email boxes starting August 31, 2021 (the day before they left BurgherGray). Taffe disabled the forwarding rules on Lee's and Tiun's BurgherGray email accounts. Once the rules were disabled, emails started coming into those email boxes on the BurgherGray servers again. Taffe Decl. at ¶¶ 11-12.

Taffe immediately alerted BurgherGray Managing Partner Gopal Burgher. As a result of Taffe's discovery, BurgherGray decided to retain Vistrada LLC ("Vistrada") to conduct a preliminary investigation in the unauthorized email forwarding. Id. at ¶ 12. Vistrada is a cybersecurity, risk management and consulting firm. See Declaration of Matt Malone ("Malone Declaration" or "Malone Decl."), submitted herewith, at ¶¶ 1, 3.

Vistrada confirmed that there were forwarding rules put in place in connection with the following BurgherGray email addresses: cklug@burghergray.com, glee@burghergray.com, rtiun@burghergray.com and tax@burghergray.com. This last email address was a shared mailbox

7

for tax practitioners at BurgherGray. Malone Decl. at ¶ 5. The forwarding rules forwarded emails from the above email addresses to cklug@klugcounsel.com,[11] glee@klugcounsel.com, rtiun@klugcounsel.com and info@klugcounsel.com, respectively. Id. these forwarding rules were put in place on or about August 31, 2021 – the day before Klug, Lee and Tiun left BurgherGray. Id.; Taffe Decl. at ¶ 3.

Also on August 31, 2021, Tiun sent "test" emails ostensibly to ensure that the forwarding rules were working: (a) Tiun sends test email to her rtiun@burghergray.com address from her rtiun@burghergray.com address at 3:05 p.m.; (b) Tiun sends test email to tax@burghergray.com from her rtiun@burghergray.com address at 3:15 p.m.; and (c) Tiun sends test email to her rtiun@burghergray.com address from her rtiun@burghergray.com address at 3:52 p.m. See Malone Decl. at Exhibit 1 at 13-14.

Also on August 31, 2021, Tiun responds to an email that was presumably sent to her BurgherGray address, only Tiun's response is from her rtiun@klugcounsel.com email address. Id. at Exhibit 1 at 11. Tiun writes in this email, in part: "I hope this email finds you well. By way of introduction, by name is Renee [Tiun] and I work with Chris at the office – we have left BurgherGray last September and have set up as Klug Counsel. Our new contact information is per our signature block." Id. This appears to be a solicitation of a BurgherGray client –a large, national bank.[12]

Also on August 31, 2021, Associate Lee sends a test email to her glee@burghergray.com address from her glee@klugcounsel.com address at 3:58 p.m. Id. at Exhibit 1 at 15.

---

[11] Taffe discovered and disabled Klug's forwarding rules on or about September 29, 2021. Taffe Decl. at ¶ 5. When Taffe disabled the forwarding rules, emails began to come into the cklug@burghergray email box again.

[12] The name of the client is redacted to protect the attorney/client privilege that belongs to the client.

8

Again, the forwarding rules were programmed such that any emails sent to the above BurgherGray email address would go straight to the corresponding Klug Counsel email address, completely bypassing the BurgherGray servers. Id. at ¶ 9.

This means that BurgherGray received no notice of any emails sent to the BurgherGray email addresses of Klug, Lee, Tiun and "Tax" while their respective email forwarding rules were in effect. When the forwarding rules were in effect, communications intended for BurgherGray were diverted to Klug Counsel without BurgherGray's knowledge. Id. at 10.

As a result, BurgherGray does not know how many emails Plaintiff and his Team intercepted, how much client information was compromised (if any) or how many clients (and fees) were plundered from BurgherGray by Klug Counsel.

## ARGUMENT

### THE ARBITRATION AWARD MUST BE VACATED BECAUSE IT WAS PROCURED BY FRAUD

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, §§ 201, 208, §§ 301-7 (the "FAA")[13] permits a court to vacate an arbitration award "where the award was procured by corruption, fraud or undue means." 9 U.S.C. § 10(a)(1).

> A petitioner seeking to vacate an award on the ground of fraud must adequately plead that (1) [defendant] engaged in fraudulent activity; (2) even with the exercise of due diligence, [plaintiff] could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration.

---

[13] Except for the narrow exception identified in section 1 of the FAA (which does not apply here), the FAA preempts state law, even the state law designated in an agreement. Terry L. Trantina, *What Law Applies to an Agreement to Arbitrate?*, DISPUTE RESOLUTION MAGAZINE, Fall 2015, at 29-31 (citing 9 U.S.C. § 1).

9

Odeon Capital Grp. v. Ackerman, 864 F.3d 191, 196 (2d Cir. 2017). Further, to "justify vacatur on the grounds of fraud or undue means, it must be 'abundantly clear' that the award was procured through improper means." Pfeffer v. Wells Fargo Advisors, LLC, 2017 U.S. Dist. LEXIS 78204, *7 (S.D.N.Y. May 23, 2017), aff'd, 723 Fed. Appx. 45 (2d Cir. 2018). Improper means or "[m]isconduct occurs under this provision only where there is a denial of 'fundamental fairness.'" Id. (quoting Kolel Beth Yechiel Mechil of Tartikov v. YLL Irrevocable Trust, 729 F.3d 99, 105 (2d Cir. 2013) (other citation, quotation marks and brackets omitted)).

First, Defendant engaged in fraudulent activity in that he and his Team clandestinely set up email forwarding rules on their BurgherGray email accounts so that any emails coming into their BurgherGray email boxes, as well as the shared email box, tax@burghergray.com, would be forwarded to the Team at Klug's new firm, Klug Counsel. Taffe Decl. at ¶¶ 9-11; Malone Decl. at ¶¶ 3-5. Moreover, the rules were composed such that emails would not appear on BurgherGray's servers; rather, the emails would go straight to Klug Counsel, bypassing BurgherGray. Taffe Decl. at ¶ 11; Malone Decl. at ¶ 9. This type of forwarding rule not only deprives BurgherGray of knowledge of the incoming emails, it is also it difficult to find. Taffe Decl. at ¶ 11; Malone Decl. at ¶ 10. This casts a pall of willful wrongdoing on the part of Klug and his Team. Id.[14]

Second, even with due diligence, Defendants would not have been able to discover the email forwarding, as Klug and his Team were actively concealing the email forwarding. Id. Not surprisingly, this misconduct by Klug and his Team was not revealed by way of discovery in the Arbitration. The wrongful email forwarding is a betrayal of trust BurgherGray placed in Klug. The email forwarding also endangered client privileged/confidential information, was violative of

---

[14] Once Taffe discovered the forwarding rules and disabled them, emails started coming into the BurgherGray email boxes of Klug, Lee and Tiun.

BurgherGray policies in connection with IT and Data Security and allowed Klug and his Team to abscond with an unknown amount of work from BurgherGray clients, who were unwittingly forwarded to Klug Counsel without their consent. Indeed, one email sent to Klug's Team begins, "Dear BG [as in BurgherGray] Team: Hope you are doing great. We would like to schedule a brief call on Thursday in order to make you aware of the updates emerged during our internal meetings…" Malone Decl. at Exhibit 1 at 10. The only reason BurgherGray found this email is because Klug's BurgherGray email was copied and the sender must have "replied to all." By this time, Klug's forwarding instructions had been disabled.

Moreover, this conduct by Klug and his Team triggers the faithless servant doctrine. The "faithless servant doctrine holds that one who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 229 (2d Cir. 2020) (citations, quotation marks and brackets omitted). Klug's misconduct could also amount to various causes of action against Klug and his Team, such as breach of fiduciary duty,[15] unfair competition,[16] breach of the Partner Agreement for "Cause," breach of the Exit Obligations

---

[15] The elements of a claim for breach of fiduciary duty are: "(1) defendant owed [plaintiff] a fiduciary duty; (2) defendant committed misconduct; (3) [plaintiff] suffered damages by that misconduct." Benson v. Farhadian, 195 A.D.3d 548, 549-50 (1st Dep't 2021) (citation and quotation marks omitted). Defendant owed BurgherGray a duty not to secretly divert emails meant for BurgherGray to his new firm, Klug Counsel; Defendant committed the aforementioned misconduct; and BurgherGray surely suffered damages which will be the subject of discovery in the event the parties engage in a second arbitration. The Vistrada investigation was preliminary, given the short time frame BurgherGray had to bring this application. If a second arbitration happens between the parties, Plaintiff will do a full-scale investigation of the unauthorized email forwarding.

[16] "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." MLGenius Holdings LLC v. Google LLC, 2022 U.S. App. LEXIS 6206, *11 (2d Cir. 2022), cert. denied, 143 S. Ct. 522 (2023). By diverting BurgherGray emails to Klug Counsel, without

11

paragraph in the Agreements,[17] conversion, unjust enrichment and breach of BurgherGray policies and procedures.[18]

The significance of Klug's wrongdoing is if BurgherGray had knowledge of the extent of Defendant's and his Team's wrongdoing, BurgherGray could have presented such evidence to the arbitral Tribunal in order to combat Klug's claim that he was entitled to payment of incentive compensation under the Agreements. Any of the aforementioned theories of recovery that BurgherGray could have asserted before the Tribunal could have had the effect of offsetting or even negating Klug's ability to recover at Arbitration. For example, a former employee found to be a faithless servant may be disgorged of compensation earned during the period of faithlessness. Yukos Capital S.A.R.L., 977 F.3d at 229.

Because BurgherGray was deprived of the knowledge of Klug's and his Team's wrongdoing, BurgherGray was therefore unable to present such evidence to the Tribunal. As a consequence, the Final Award Klug obtained by fraud (by concealing from the Tribunal that he was engaging in malfeasance that was secretly damaging BurgherGray – even during the pendency of the Arbitration) must be vacated and the Arbitration re-tried on a fair playing field.

---

BurgherGray's knowledge or consent, Defendant misappropriated relationships and business that belonged to BurgherGray, which relationships and business were procured through BurgherGray's labors. Defendant's bad faith is evident.

[17] Both of the Agreements require destruction or return of BurgherGray confidential information, including confidential client information upon an employee's departure from the firm. Klug and his Team breached this provision by installing the forwarding rules on their BurgherGray email accounts, thereby maintaining an unauthorized stream of such information to them at their new firm, Klug Counsel. See Lin Decl. at Exhibits 3 and 4 at ¶ 15.

[18] Klug specifically agreed to be bound by BurgherGray policies and procedures. See Lin Decl. at Exhibit 3 at ¶ 8; and Exhibit 4 at ¶ 8.

Third, the fraud committed by Klug and his Team are material to the Arbitration and its Final Award, in that the Tribunal could well have decided that Klug was not entitled to the disputed incentive compensation if Defendants had had knowledge of Klug's faithlessness and had been able to present evidence of same to the Tribunal. Moreover, such faithlessness by Klug would have rendered the termination of Klug's employment as one for "Cause," under the Partner Agreement which would have entitled BurgherGray to the repayment of some of the rent it paid for the office space it had rented for Klug and his Team. Lin Decl. at Exhibit 4 at ¶ 20.

If the Arbitration Award is permitted to stand, it would be fundamentally unfair. This is because the Tribunal was not able to consider the fact that Plaintiff engaged in actionable misconduct while he was an employee of BurgherGray. This misconduct could have led the Tribunal to decide that Defendant was not entitled to the compensation he sought (and won) in the Arbitration.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Final Award issued in the Arbitration be vacated.

Dated: March 13, 2025                                    Respectfully submitted,

**GOLDBERG SEGALLA LLP**

By: _/s/ Aimée S. Lin_
　　Aimée S. Lin

　　1037 Raymond Boulevard
　　Suite 1010
　　Newark, New Jersey 07928
　　Tel.: 973-738-3600
　　alin@goldbergsegalla.com

　　*Attorneys for Plaintiff BurgherGray LLP*

13