UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BURGHERGRAY LLP,

Petitioner,

v.

CHRISTOPHER KLUG,

Respondent.

**OPINION & ORDER**

25-cv-02104 (ER)

RAMOS, D.J.:

BurgherGray LLP brought this action against Christopher Klug to vacate an arbitration award (the "Award") granted to Klug. Doc. 4. The arbitration proceedings arose out of Klug's claim for breach of contract, alleging that BurgherGray failed to comply with its contractual obligations with respect to his employment with the firm. Doc. 4-6. BurgherGray alleges that Klug procured the Award by fraud and seeks vacatur pursuant to Chapter One, Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10(a) (the "FAA"). Doc. 4 ¶¶ 27–35. Klug has cross-petitioned to confirm the Award. Doc. 15. For the reasons set forth below, BurgherGray's petition to vacate the Award is DENIED, and Klug's cross-petition to confirm the Award is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. The Parties and Their Contractual Relationship

BurgherGray is a Washington D.C. limited liability law firm with its main offices in New York City. Doc. 4 ¶ 1. BurgherGray co-founder Gopal Burgher is the firm's managing partner. Doc. 4 ¶ 17. Christopher Klug is an attorney domiciled and practicing in Washington, D.C. Doc. 4 ¶¶ 2, 8. BurgherGray and Klug entered into a contractual relationship, pursuant to which Klug was initially hired to work at the firm as Of Counsel

(the "Of Counsel Agreement"),[1] and subsequently, as non-equity contract partner (the "Partner Agreement") on September 19, 2019, and August 17, 2020, respectively.  Doc. 4-1; Doc. 4-2.  Pursuant to the Partner Agreement, Klug was entitled to a base salary, "performance-based incentive[s]," and percentages of fees billed to clients for his legal services.[2]  Doc. 4-1 § 3(b)–(c).  Further, the Partner Agreement included an arbitration clause, stipulating that "any controversy" between the parties would be "resolved solely by binding arbitration in New York, New York in accordance with the rules of the American Arbitration Association" (the "AAA").  *Id.* § 16.  The Partner Agreement also included a choice of law and venue clause, which stated that New York law was controlling, and all proceedings related to the enforcement of the Partner Agreement were under the "exclusive jurisdiction" of New York courts.  *Id.* § 17.

According to Klug, in February 2021 he began to notice issues with BurgherGray's "recordkeeping, accounting, management, and communications" that prevented BurgherGray from paying him under the terms of the agreements on a timely basis and worked with BurgherGray to ensure his invoices were paid.  Doc. 15 at 8.  After these efforts, Klug states that he was ultimately paid in July 2021 for work performed in 2019 and 2020 under the Of Counsel Agreement but was refused payment

---

[1] The Of Counsel Agreement is not at issue here.

[2]  Pursuant to the Partner Agreement, Klug was to receive a base salary of $150,000.  Doc. 4-1 § 3(b).  The Partner Agreement also included a "performance-based incentive compensation" clause that stated BurgherGray would pay Klug an additional $90,000 if the work "originated by [Klug] and collected by [BurgherGray]" amounted to at least $600,000.  *Id.* § 3(c)(i).  The Partner Agreement further included payments of "50% of the total amount in excess of $600,000 collected…or business originated and executed by [Klug]," 10% of billed work originated by Klug and executed by others, and 40% of work billed originated by others and executed by Klug.  *Id.* § 3(c)(ii)–(iv).  The Partner Agreement also detailed his payment schedule:  (1) base salary paid semi-monthly; (2) payment no later than January 31st of the following year for work he originated and executed; (3) payments "on a quarterly basis no later than the last day of the month following the quarter" in which BurgherGray received payment for work he originated and did not execute; and (4) payments made "no later than the last day of the month following the month in which the related payment was received by [BurgherGray]" for work others originated and he executed.  Doc. 4-1 § 3(b)–(c).

of over $400,000 for work performed in 2020 and 2021 under the Partner Agreement. *Id.* On September 1, 2021, Klug resigned from BurgherGray to open his own firm, Klug Counsel PLLC, and ended the parties' contractual relationship. Doc. 4-15 at 5, 9. After his resignation, Klug attempted to settle the amount due to him under the Partner Agreement with BurgherGray but was unable to do so "amicably." Doc. 15 at 8.

    2. *The September 2021 Email Settings Audit*

After Klug's resignation from BurgherGray, the parties communicated via email from September 23, 2021, to September 29, 2021 regarding Klug's unfilled invoices and the possibility of working together on a project for a BurgherGray client. Doc. 15-2; Doc. 15-5. On September 27, 2021, Klug forwarded an email to Burgher from that client, in which the client asked for a call with the "[BurgherGray] Team," and asked how BurgherGray would like to proceed. Doc. 15-2 at 4. In response, Burgher asked when Klug had received the email from the client and if Klug was willing to continue working on the matter.[3] *Id.* at 3. On September 29, 2021, Klug forwarded another email to Burgher from the same client, in which the client again asked Klug to meet regarding the project. Doc. 15-5 at 2–3. This second email that Klug forwarded to Burgher was addressed to Klug at his prior BurgherGray email address, and to Klug's associate, Gina Lee ("Lee"), and paralegal, Renee Tiun ("Tiun"), at their new Klug Counsel addresses.[4] *Id*. Burgher responded to the second forwarded email on September 29, 2021, confirming that BurgherGray would "reach out to [the client] to discuss . . . and avert [sic] as appropriate." *Id.* at 2.

---

[3] Burgher asked Klug in their September 27, 2021 email exchange, "Did you receive that [email] today or previously?," to which Klug replied, "That email was received yesterday (Monday)." Doc. 15-2 at 2–3.

[4] Klug argues that this email correspondence should have put BurgherGray on notice that the "email forwarding [settings] were therefore created by [Klug's] team to ensure clients were not adversely affected" and that "BurgherGray was fully aware of and condoned this transitionary period as can be shown from [Burgher's] email communications with [Klug] in which the former did not raise any issues about the forwarded emails." Doc. 15 at 9.

On the same day, BurgherGray's chief information officer Terry Taffe conducted a "standard IT audit" and "discovered that someone had created forwarding [settings] for Klug's BurgherGray email" that caused emails addressed to Klug at his BurgherGray email address to be forwarded automatically to @klugcounsel.com without "permission." Doc. 4-12 ¶ 5.  Taffe claimed that the email forwarding settings were "programmed such that any emails sent to cklug@burghergray.com after Klug's resignation on September 1, 2021 would not even hit BurgherGray servers."  *Id.* ¶ 6.  Although BurgherGray's policy in 2021 required at least one attorney at the firm to "monitor" Klug's email inbox for client emails after resignation, the forwarding settings for Klug's BurgherGray email were not discovered until Taffe's audit.  *Id.* ¶ 4.  Klug's email forwarding settings were disabled by Taffe on the same day, September 29, 2021.  *Id.* ¶ 7.

### 3.  The Arbitration Proceedings

A year and five months after Klug left BurgherGray, Klug filed a demand for arbitration in New York on February 17, 2023, alleging that BurgherGray failed to pay him in accordance with the Partner Agreement.  Doc. 4-6.  That same day, BurgherGray filed an answer and counterclaim against Klug asserting that it "had paid [Klug] 'all amounts due under the agreement between the parties'" and that Klug owed BurgherGray for rent and other expenses related to the office space BurgherGray leased for Klug.  Doc. 4-4 at 3.  Klug answered BurgherGray's counterclaim on March 24, 2023.  *Id.* at 3–4.[5] The arbitration was assigned to John S. Siffert (the "Arbitrator").  Doc. 4-4 at 4, 64.

During discovery, BurgherGray indicated its intention to amend its counterclaim to include a claim that the firm was entitled to payments Klug had allegedly directly accepted from clients.  Doc. 4-4 at 7.  Klug then "threatened" to amend the demand to

---

[5] Arbitration commenced in New York pursuant to the Partner Agreement, entitled *Christopher Klug v. BurgherGray LLP,* AAA Case No. 01-23-0000-7133.  Doc. 4 ¶ 10.

"allege that the new counterclaim constituted fraud." *Id.*  The Arbitrator requested that BurgherGray submit evidence to "support the possibility that [Klug] was paid money by clients that should have been paid to [them]." *Id.* at 8.  BurgherGray did not do so, effectively abandoning the claim in arbitration, and both parties instead withdrew their motions to amend their pleadings on October 4, 2023, and sought leave to cross-move for summary judgment. *Id.* at 8–9.  The Arbitrator granted the parties' request on the condition that they "simultaneously submit a stipulation of facts not in dispute," but both parties moved for summary judgment on October 20, 2023, without submitting such a stipulation. *Id.* at 9 (internal quotation marks omitted).  Later, on November 29, 2023, Klug moved, pursuant to AAA rules, for leave to amend the arbitration demand to include a D.C. Wage Act claim. *Id.* at 16–18.  The Arbitrator verbally denied Klug's motion to consider the Wage Act claim.[6] *Id.* at 19; Doc. 4-15 at 6.

After a significant amount of time had passed without the filing of a stipulation of undisputed material facts, on February 29, 2024, the Arbitrator revoked the parties' permission to move for summary judgment and directed the parties to complete discovery in advance of an evidentiary hearing. Doc. 4-4 at 16.  On May 10, 2024, prior to the evidentiary hearing in the arbitration, Klug filed a claim pursuant to the D.C. Wage Act in the D.C. Superior Court against BurgherGray, Burgher, and Sandra Honegan-Pounder, the other co-founder of the firm. Doc. 4-8.  The action was dismissed without prejudice on July 18, 2024, for lack of jurisdiction based on the forum selection and arbitration clauses in the Partner Agreement. *Id.* at 9.

---

[6] The Arbitrator barred the D.C. Wage Act because (1) the D.C. claim was a statutory claim, not a contract claim, (2) the demand only alleged a breach of contract, (3) the parties had agreed not to amend the pleadings, (4) discovery did not produce evidence concerning the new claim, and (5) the new claim was not timely.  Doc. 4-4 at 16–23.

Shortly after Klug's Wage Act claim was dismissed in D.C., the evidentiary hearing in the arbitration was held over Zoom on July 30, 2024, and August 26, 2024. Doc. 4-4 at 23. The hearing included testimony from Klug, Burgher, and a written statement by Elijah Tate, BurgherGray's account manager. *Id.* The parties later exchanged post-hearing submissions, with "numerous affidavits and exhibits." *Id.* 23–24.

4. *The Post-Arbitration Period and the Final Award*

On August 30, 2024, four days after the evidentiary hearing, but before the Award was issued, Klug filed his D.C. Wage Act claim in the Southern District of New York. Doc. 4-9 at 4. The case was assigned to Judge Paul Engelmayer. *Id*. On November 25, 2024, the Arbitrator issued the Award in favor of Klug and denied BurgherGray's counterclaim. Doc. 4-4 at 63. The Arbitrator found that "[Klug] ha[d] satisfied his burden of establishing the damages claimed in the demand, [ ] that [BurgherGray]'s defenses [we]re without merit" and that "[BurgherGray] was not entitled to any damages based on its Counterclaim." *Id.* at 32. Klug was also held not responsible for rent for the D.C. office space. *Id.* at 52–56. The Arbitrator credited Klug's testimony and found that the spreadsheet Klug created and submitted was "accurate and reliable" in documenting the unfilled invoices under the Partner Agreement. *Id.* at 33. Conversely, the Arbitrator did not find the testimony of Burgher or Tate "reliable because it was not based on BurgherGray's business records" and "instead . . . constitute[d] attorney work product that was created for" arbitration. *Id.* at 34.[7] Additionally, the Arbitrator found that BurgherGray had "difficulty in formulating cogent reasons for denying [Klug] payment"

---

[7] In response to multiple requests from the Arbitrator pre-hearing and during discovery, BurgherGray repeatedly stalled and failed to produce documents on multiple occasions, and claimed that it had to "start[ ] from scratch" to recreate the business records of Klug's interactions with clients. Doc. 4-4 at 4–5, 9–13, 34. BurgherGray attributed their delay to errors that occurred after the firm migrated to a new billing system, and the absence of the administrative personnel that had once handled recordkeeping. *Id.* at 12, 35. The business records submitted as evidence by BurgherGray were thus "recreated." *Id.* at 38–39.

and had failed to "acknowledge all the other mistakes, omissions, and gaps in its recordkeeping, which d[id] not make up for the misinformation or mask the lack of information contained in BurgherGray's proffered documents." *Id.* at 36. The Arbitrator also found that there was evidence that BurgherGray kept Klug from accessing bank and firm records that documented the payments he was owed. *Id.* at 39. Based on BurgherGray's consistent failure to produce evidence that contravened Klug's demands, the Arbitrator drew negative inferences against BurgherGray. *Id*. at 42–45.

The Arbitrator granted Klug $406,098.96 in damages plus New York prejudgment interest at 9% from January 1, 2022, until payment in full, $2,505.50 in unreimbursed expenses, $140,000 in attorney's fees, and $58,850.50 in reimbursement for arbitration administrative fees. Doc 4-4 at 63.

### 5. *The First Petition to Vacate the Award*

After the Award issued, Klug's Wage Act claim was still pending before Judge Paul Engelmayer in the Southern District of New York. On December 30, 2024, the Court ordered Klug to show cause as to why the Wage Act claim "should not be dismissed as procedurally barred" due to the arbitration and forum selection clauses in Klug's employment agreements. Doc. 4-9 at 5. Klug responded on January 21, 2025, and argued that the Arbitrator was incorrect to bar the Wage Act claim in the arbitration and that he should be allowed to bring the claim in the New York district court. *Id*. BurgherGray opposed Klug's response to the order to show cause on January 28, 2025, and argued that the arbitration provisions precluded Klug from pursuing the claim before the Court. *Id*.

Two days later, on January 30, 2025—two months after the Award was issued and almost three and a half years after the first audit— BurgherGray conducted an IT audit to "ensure compliance with a BurgherGray client's cybersecurity requirements" and

7

discovered email forwarding settings that had been put in place for Lee and Tiun, who left BurgherGray with Klug, that caused other emails to be forwarded to Klug's new firm. Doc. 4-15 at 4–5. After BurgherGray was alerted to this fact, the firm hired cybersecurity firm Vistrada LLC to conduct a forensic investigation. Doc. 4-12 ¶ 13; Doc. 4-15 at 5.

Vistrada's investigation confirmed Taffe's earlier 2021 audit results; namely, that an email forwarding setting from Klug's email account at BurgherGray to his new firm email address was put into place on September 1, 2021, and was discovered and disabled by Taffe on September 29, 2021. Doc. 4-14 at 5. The Vistrada investigation also found that email forwarding settings for three other BurgherGray accounts—for Lee, Tiun, and BurgherGray's firm-wide tax practice inbox—remained in place from August 31, 2021, until they were also disabled by Taffe on January 30, 2025. *Id*. The investigation further found that the email forwarding settings made it so that the emails would bypass BurgherGray's detection completely. *Id.* Vistrada determined that there were no logs of when these settings were created or who created them. *Id.* The investigation also identified specific client emails forwarded to Klug and his team at their Klug Counsel email addresses between the end of August 2021 and December 2021. *Id.* at 9–14.

Over two weeks after this second IT audit, on February 20, 2025, BurgherGray petitioned Judge Engelmayer to vacate the arbitration Award, arguing that Klug's forwarding activity amounted to fraud in procurement of the Award. Doc. 4-9 at 5; Def.'s Br. In Supp. Of Mot. To Vacate Arbitration Award and Dismiss the Compl., *Klug v. BurgherGray LLP*, No. 24 Civ. 6577 (PAE), Doc. 23-10. However, the petition was served on Klug's attorneys through the docket of the Wage Act case on CM/ECF and not, as discussed below, in accordance with the FAA. Doc. 16 at 6–7 n. 2. Klug then moved for partial vacatur of the Award on February 26, 2025, arguing that the Arbitrator manifestly disregarded the law by barring the D.C. Wage Act claim in the arbitration.

Doc. 4-9 at 5; Pl.'s Memo. In Supp. Of Mot. To Withdraw at 13–17 *Klug v. BurgherGray LLP*, No. 24 Civ. 6577 (PAE), Doc. 25.

Judge Engelmayer found that Klug's Wage Act claim was barred due to the arbitration clause in the Partner Agreement and his untimely service on BurgherGray, and *sua sponte* dismissed the claim for lack of jurisdiction with prejudice on March 11, 2025. Doc. 4-9 at 5, 8, 10. Judge Engelmayer also denied both parties' motions to vacate the Award as moot on the same date. *Id.* at 9.

### 6. *The Instant Petition to Vacate the Award*

After the dismissal of BurgherGray's first petition to vacate the Award via the Wage Act case before Judge Engelmayer, BurgherGray filed the petition anew in this Court on March 14, 2025. Doc. 4. BurgherGray's instant petition to vacate the Award is based on the same argument to vacate the Award it filed before Judge Engelmayer on February 20, 2025. *See* Def.'s Br. In Supp. Of Mot. To Vacate Arbitration Award and Dismiss the Compl., *Klug v. BurgherGray LLP*, No. 24 Civ. 6577 (PAE), Doc. 23-10.

In response, Klug contests the technical sufficiency of the Vistrada investigation and BurgherGray's account based on the analysis of cybersecurity expert Johnathan Marimo. Doc. 15-3; Doc. 15-4. Klug claims that, instead, the email forwarding settings were "consistent with the nature of the parties' relationship post-separation" that contemplated the two firms working together for the benefit of joint clients until projects were transitioned successfully. Doc. 15 at 14. BurgherGray maintains that they "do not know how many emails [Klug] and his Team intercepted, how much client information was compromised (if any) or how many clients (and fees) were plundered from BurgherGray by Klug Counsel." Doc. 4 ¶ 25.

9

### B. Procedural History

The Award was issued on November 25, 2024.  Doc. 4-4 at 64.  Accordingly, BurgherGray was required to file any petition challenging the Award by February 25, 2025, 90 days later.  BurgherGray filed its first petition to vacate the Award on February 20, 2025, after the purported discovery of the email forwarding activity to Klug Counsel in January 2025.  Doc. 4-9 at 5.  However, it filed the petition on the docket for the Wage Act action before Judge Engelmayer.  *Id*.  The petition was later denied as moot on March 11, 2025.  Doc. 4-9 at 10.  BurgherGray filed its renewed petition to vacate the Award on March 14, 2025, more than 90 days after the Award was issued.  Doc. 4.  Service of the renewed petition was executed on Klug by process server in the District of Columbia on March 14, 2025.  Doc. 16 at 7.  In response, Klug filed a cross-petition to confirm the Award on April 14, 2025.  Doc. 15.

## II.    LEGAL STANDARD

The FAA, 9 U.S.C. § 1, *et seq.*, provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  District courts "treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (internal quotation marks and citation omitted).  The award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Second Circuit has recognized that "an extremely deferential standard of review" is appropriate in the context of arbitral awards in order "[t]o encourage and support the use of arbitration by consenting parties."  *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  "The arbitrator's rationale for an award need not be

explained, and . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees International Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)). Confirmation of an arbitration award is thus "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *Id.* (internal quotation marks and citations omitted). This "severely limited" review promotes the twin goals of arbitration, namely to "settle[] disputes efficiently and avoid[] long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

Conversely, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco International Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Under the FAA, a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

11

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, as "judicial gloss" on these specific grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks and citation omitted).

## III.    DISCUSSION

BurgherGray seeks vacatur of the Award and alleges that Klug procured the award by fraud.  Doc 4-15.  In its opposition to Klug's cross petition, BurgherGray also claims that its petition for vacatur is timely and that service on Klug sufficient and proper under the FAA and Federal Rules of Civil Procedure.  Doc. 16.  Klug seeks confirmation of the Award and maintains that BurgherGray's petition is untimely and its service improper.  Doc 15.  Klug denies the claim that the Award procured by fraud.  Doc. 15; Doc. 17.

### A.  BurgherGray's Petition to Vacate the Award is Untimely

The Award was issued on November 25, 2024; accordingly, the three-month deadline for service of a petition to vacate was February 25, 2025.  Doc. 4-4 at 64. BurgherGray argues that its instant petition for vacatur is timely, as the three-month deadline was equitably tolled when it first filed the petition before Judge Engelmayer on February 20, 2025—five days before the FAA deadline.  Doc. 16 at 6–7 n. 2, 6–7. BurgherGray claims that it had until March 16, 2025, to serve Klug the renewed petition—five days after Judge Engelmayer denied its first petition on March 11, 2025. *Id*.  The renewed petition was served on March 14, 2025.  Doc. 16 at 7.  Klug argues that there is no equitable tolling exception to the FAA's three-month deadline and that BurgherGray's service by process server did not comply with the FAA.  Doc. 15 at 10–13; Doc. 17 at 5–8.

12

Pursuant to the FAA, if the opposing party is a resident of the district where the award was made, a petition to vacate an arbitration award must be served to the opposing party or their representation within 90-days of the Award being filed or delivered. 9 U.S.C. § 12. If the opposing party is a nonresident, a motion to vacate must be served "by [a] marshal . . . in like manner as other process of the court" in a district where the party resides. *Id.* The Second Circuit has held that the mandatory language of the FAA means that there is "no exception to [the] three months limitations period . . . in the statute." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). "Thus, under its terms, a party may not raise a motion to vacate . . . after the three-month period has run" as "there is no common law exception." *Id.* Further, the Second Circuit has not reached the question as to whether the equitable tolling doctrine applies to the FAA. *See Dalla-Longa v. Magnetar Capital LLC*, 33 F.4th 693, 697 (2d Cir. 2022) ("[The Second Circuit] need not reach the question of whether there may ever be equitable exceptions to the rule of strict compliance with § 12's three-month deadline, because [Appellant] has not shown any equitable reason for . . . failure to serve . . . properly."). Additionally, district courts must consider whether the party seeking an equitable tolling exception "acted with reasonable diligence during the time period she seeks to have tolled" and "has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80–81 (2d Cir. 2003) (internal citations and quotation marks omitted).

District courts in New York have largely declined to approve exceptions to the three-month mandatory service period on the basis of equitable tolling, only allowing for the exception in "rare (and distinguishable) instances" that "do not extend to . . . neglect." *White v. Local 46 Metallic Lathers Union and Reinforcing Iron Workers of New York City*, No. 01 Civ. 8277 (RMB) (GWG), 2003 WL 470337 (S.D.N.Y. Feb. 24, 2003) at \*4

13

(quoting *Irwin v. Dept. of Veteran's Affairs*, 498 U.S. 89, 96 (1990)).  *See also Safran Electronics and Defense SAS v. Exail SAS,* 764 F.Supp.3d 133, 144 (S.D.N.Y. 2025) ("Any such exception [to the FAA's three-month limitations period] stands on already shaky ground…[and] Petitioner's have not shown any equitable reason." (internal quotations omitted)); *Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency*, 714 F.Supp. 634, 638 (E.D.N.Y. 1989) ("[P]laintiffs cannot use a common law exception to circumvent the [FAA]'s strict time limitations.").

This Court declines to extend an equitable tolling exception on the facts presented here.  BurgherGray did not act with diligence from February 20, 2025, to March 11, 2025 to preserve its first petition, nor were the circumstances of the first petition so unforeseen that equitable tolling should apply.  Doc. 17 at 6.  BurgherGray served their first petition on Klug's attorneys via CM/ECF, on the docket for a separate case—Klug's Wage Act claim—that Klug was not allowed to pursue in the arbitration.  Doc. 16 at 6–7 n. 2.  BurgherGray thereafter opposed Klug's response to Judge Engelmayer's order to show cause and argued that the Wage Act claim was procedurally barred.  Doc. 4-9 at 5; Doc. 17 at 6.  Thus, the denial of BurgherGray's first petition to vacate as moot after Klug's Wage Act claim was dismissed was not an unforeseen "circumstance[ ] [ ] so extraordinary" that the equitable tolling exception should apply.  *Zerilli-Edelglass*, 333 F.3d at 80–81.  Further, BurgherGray provides no other "equitable reason" demonstrating a "rare (and distinguishable) instance[ ]" that requires such an exception.  *Safran Electronics,* 764 F.Supp.3d at 144; *White,* 2003 WL 470337 at *4 (internal citation omitted).  Therefore, BurgherGray's petition is untimely, even if Klug was properly served on March 14, 2025, in the District of Columbia.  Doc. 16 at 9–10 (citing *Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.,* 49 F.4th 802, 812 (2d Cir. 2022) (internal citations omitted) ("The phrase 'in like manner as other

14

process of the court' [in 9 U.S.C. § 9] . . . refers to Fed. R. Civ. P. 4.")) (arguing that the language in 9 U.S.C. § 9 mirrors the language in 9 U.S.C. § 12).

**B. BurgherGray Fails to Show that the Award was Procured by Fraud or Undue Means**

In any event, the petition fails on the merits. BurgherGray argues that vacatur is proper as Klug procured the award by fraud. First, BurgherGray argues that Klug and his team engaged in fraudulent activity when they created unauthorized email forwarding settings from their BurgherGray email accounts to their Klug Counsel email accounts prior to their departure from the firm. Doc. 4-15 at 13. Second, BurgherGray argues that these forwarding settings were not discoverable to BurgherGray prior to the issuance of the Award, even with the exercise of due diligence. *Id.* at 13–14. Lastly, BurgherGray contends that the alleged fraud materially related to the issue in arbitration, as BurgherGray was precluded from presenting evidence during the arbitration demonstrating that Klug was acting as a "faithless servant" that was not entitled to the compensation he sought. *Id.* at 16. Klug argues that confirmation is proper as the Award was not procured by fraud. First, the email forwarding settings were not "clandestine" and do not constitute fraudulent activity. Doc. 15 at 14. Second, the email settings were or could and should have been discovered by BurgherGray prior to the issuance of the Award. *Id.* at 17. Finally, Klug argues that the alleged fraudulent activity was not materially related to the issue in arbitration, as the email forwarding settings were not material to the Arbitrator's decision regarding Klug's claim for payments due under the Partner Agreement. *Id.* at 21.

Courts may grant vacatur of an arbitration award on the basis of fraud in procurement, when a party makes an adequate three-part showing that "(1) [the opposing party] engaged in fraudulent activity, (2) even with the exercise of due diligence, [the moving party] could not have discovered the fraud prior to the award issuing, and (3) the

15

fraud materially related to an issue in the arbitration." *Odeon Capital Group v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017) (internal citations omitted). Further, "it must be 'abundantly clear' that the award was procured through improper means." *ACP Investment Group, LLC v. Blake*, No. 8 Civ. 9364 (JPO), 2016 WL 5947290, at *4 (S.D.N.Y. Oct. 13, 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc., v. YLL Irrevocable Trust*, 729 F.3d 99, 105 (2d Cir. 2013)). "[M]isconduct occurs under this provision only where there is a denial of 'fundamental fairness.'" *Kolel Beth*, 729 F.3d at 105 (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). The Court finds that BurgherGray has failed to show that the Award was procured by fraud as BurgherGray could have discovered the email settings prior to the arbitration and the settings are not materially related to the issue in arbitration.

1. *The Email Forwarding Settings Were or Could Have Been Discovered by an Exercise of Due Diligence*

Alleged fraudulent activity advanced as the basis for a petition to vacate an arbitration award must be "newly discovered." *Hakala v. Deutsche Bank AG*, No. 01 Civ. 3366 (MGC), 2004 WL 1057788, at *3 (S.D.N.Y. May 11, 2004) (internal citation omitted). BurgherGray acknowledges, as it must, that it discovered and disabled the email forwarding setting for cklug@burghergray.com on September 29, 2021, 17 months *before* Klug initiated the arbitration. Doc. 4-12 ¶¶ 5–7. Klug argues that BurgherGray was on notice of the forwarding activity of his team in late September 2021. Doc. 15 at 14. Thus, it was not "newly discovered." Doc. 15 at 17–18; *Hakala*, 2004 WL 1057788, at *3 (internal citation omitted).

Further, BurgherGray does not provide any basis for the Court to conclude that the other email forwarding settings were not discoverable, even with their exercise of due diligence, before the issuance of the Award. Klug cites a case from the Eastern District

16

of New York that is instructive. Doc. 15 at 17. The case concerned a motion for vacatur on the basis of arbitrator partiality due to a prior relationship with the opposing party; the Court declined to vacate a final arbitration award on that basis as the party "'should have known'" or "'could have learned'" about the evidence "'just as easily before or during arbitration.'" *Milano v. State Farm Fire and Casualty Co.*, No. 20 Civ. 179 (RPK) (RER), 2021 WL 1723251 (E.D.N.Y. Apr. 29, 2021) at *3 (quoting *Certain Underwriting Members of Lloyds London v. State of Florida, Department of Financial Services*, 892 F.3d 501, 506 (2d Cir. 2018)). In this district, an exercise of due diligence requires a moving party to act on alleged fraud it did (or should have) discovered prior to issuance of an arbitration award in a timely manner as "to avoid reexamination . . . of credibility matters which either could have been or were in fact called into question during the course of the arbitration." *Hakala*, 2004 WL 1057788, at *3 (quoting *A. Halcoussis Shipping Ltd. v. Golden Eagle Liberia Ltd.*, No. 88 Civ. 4500 (MJL), 1989 WL 115941, at *3 (S.D.N.Y. Sept. 27, 1989)).

BurgherGray argues that the alleged fraud was not discoverable through due diligence "in connection with the arbitration" because Klug allegedly concealed the forwarding settings, but BurgherGray already had "actual knowledge" of Klug's email activity for years prior to the arbitration. Doc. 16 at 15; Doc. 17 at 12–13. Yet, BurgherGray did not act on the 2021 audit results in a timely manner and did not raise this fraud claim during the 2023 arbitration. Doc. 17 at 12–13. Moreover, as Klug argues, BurgherGray also does not provide an explanation for its lack of action after the 2021 audit; BurgherGray does not raise any arguments or defenses about technical difficulties that prevented further investigation before or during arbitration. Doc. 15 at 19. Indeed, it was BurgherGray *itself* that "discovered" the forwarding settings for Lee and Tiun during a subsequent IT audit. Doc. 4-12 ¶¶ 9–13.

17

BurgherGray's arguments do not overcome the fact that the firm could have discovered all the alleged fraudulent activity well before the arbitration began. *Hakala*, 2004 WL 1057788, at *3 (internal citation omitted) (denying a petitioner vacatur where they did nothing to exercise their due diligence and "avoid reexamination . . . of [a] credibility matter[ ] which . . . could have been" in the arbitration). This is especially true in light of the fact that BurgherGray moved to amend its counterclaim to allege that Klug was directly accepting payments from BurgherGray clients but then abandoned the proposed amendment after being asked by the Arbitrator to provide evidence to support the new claim. Doc. 4-4 at 7–8; Doc. 15 at 19–21.

### 2. The Email Forwarding Settings Were Not Materially Related to the Issue in Arbitration

The Court further finds that the email forwarding settings were not materially related to the issue in arbitration: the failure to pay Klug for work completed *prior* to his separation from BurgherGray. To show that alleged fraudulent activity is materially related to an issue in arbitration, the moving party must "demonstrate a nexus between the alleged fraud and the decision made by the arbitrators." *Odeon Capital,* 864 F.3d at 196. The alleged fraud must not solely be related to "a collateral issue" or "an issue that did not influence the arbitrators' findings," as this would not show that an award was "'procured by' fraud." *Id.* at 197. BurgherGray's claim that Klug's actions prevented them from presenting the email forwarding settings as evidence of faithless service does not establish such a "nexus." *Odeon Capital,* 864 F.3d at 196–97. BurgherGray relies on *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020), to assert that Klug's alleged faithless service would result in his "disentitlement" to compensation. Doc. 4-15 at 14–15; *Yukos Capital*, 977 F.3d at 229. However, BurgherGray fails to explain how

18

this evidence would require Klug to disgorge the compensation he was owed prior to their creation. Doc. 17 at 11.

In *Yukos Capital*, the Second Circuit upheld the lower court's jury instructions that would allow Yukos "to disgorge [defendant's] compensation pursuant to the faithless servant doctrine only if [defendant] had breached his duty of loyalty to the Plaintiffs 'in substantial respects'" during his employment. *Yukos Capital*, 977 F.3d at 237. The Second Circuit made clear that, under the standard the district court applied to determine the defendant's faithless service in New York, courts have "found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." *Id.* (internal citations omitted). *Yukos Capital* does not help BurgherGray because there is no link between the alleged fraud and the issue in arbitration. The defendant in *Yukos Capital* was alleged to be a faithless servant who was not entitled to the compensation gained from schemes carried out *during* his employment. *Yukos Capital*, 977 F.3d at 224. The email forwarding settings that BurgherGray advances as proof of Klug's faithless service were effective upon Klug's resignation on September 1, 2021. Doc. 4-12 ¶ 6; Doc. 4-14 at 5. At that time, as determined by the Arbitrator, BurgherGray already owed Klug over $400,000 for work from 2020 and 2021 pursuant to the Partner Agreement. Doc. 4-4 at 42, 62; *see also* Doc. 15 at 8 ("[BurgherGray] refused to make payment under the Partner Agreement…When he left, BurgherGray owed Mr. Klug over four-hundred thousand dollars."). The email forwarding settings were thus "collateral" to the Arbitrator's final determination. *Odeon Capital,* 864 F.3d at 196–97.

      3.  *The Alleged Fraud is Not Abundantly Clear and There was Fundamental Fairness*

The Court also finds that, in any event, it is not "abundantly clear" that the Award was procured by undue means, nor that BurgherGray was denied "fundamental fairness" during the arbitration proceedings. *ACP Investment Group, LLC*, 2016 WL 5947290, at *4 (internal citation omitted); *Kolel Beth,* 729 F.3d at 105 (internal citation omitted). There is a difference between fraudulent activity that is the basis for arbitration and fraudulent activity during an arbitration that denies fundamental fairness to the opposing party and procures an award by undue means. Doc. 15 at 16 (citing to *Bridgeport Rolling Mills Co. v. Brown,* 314 F.2d 885, 885–86 (2d Cir. 1963)).[8] In the instant case, BurgherGray abandoned its claim of fraud by Klug based on the email settings during arbitration and thus has not made "abundantly clear" that the email forwarding settings constitute fraudulent activity that warrants vacatur. *ACP Investment Group, LLC*, 2016 WL 5947290, at *4 (internal citation omitted).

Further, BurgherGray was not denied "fundamental fairness" due to the inability to use evidence of the email forwarding settings. The Arbitrator gave them numerous opportunities over an extended pre-hearing period to produce evidence to support their proposed amended counterclaim. Doc. 4-4 at 4–16. The Arbitrator also thoroughly considered each party's subsequent submissions and arguments and provided a detailed and reasoned justification for the Award. Doc 4-4. In sum, BurgherGray does not meet their "heavy burden" of proof and fails to "clear [the] high hurdle" necessary to show that the Award was procured by fraud and undue means. *D.H. Blair & Co.*, 462 F.3d at 110 (internal citation omitted); *Duferco International Steel Trading*, 333 F.3d at 388; *Stolt-Nielson*, 559 U.S. at 671.

---

[8] The Second Circuit ruled in *Bridgeport Rolling Mills Co. v. Brown*, 314 F.2d 885, 885–86 (2d Cir. 1963), that the discovery of evidence after arbitration that could have upheld the employer's discharge for cause did not warrant vacatur of the award on the basis of fraud in procurement, as the arbitrator's decision was based on the "failure of the employer's proof to convince" at the time of the discharge.

20

## IV.    CONCLUSION

For the reasons set forth above, BurgherGray's petition to vacate the Award is DENIED, and Klug's cross-petition to confirm the Award is GRANTED.  The Clerk of Court is respectfully directed to close the case.

It is SO ORDERED.

Dated:    December 12, 2025
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

21